# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action G-06-776 |
| | § | |
| CHARLES K. SCRUGGS, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

The instant case involves a dispute regarding the scope of a settlement agreement voluntarily entered into by the parties with respect to defendant's violations of the Clean Water Act ("CWA") and the River and Harbors Act ("RHA") in 2002, and defendant's subsequent conduct, in 2006, that plaintiff maintains constitutes a separate violation of Section 404 of the CWA.

Pending before the court are defendant's motion for summary judgment as to plaintiff's claims that were settled by the April 17, 2003, agreement (Dkt. 21), plaintiff's response (Dkt. 22), and defendant's reply (Dkt. 24); plaintiff's motion for summary judgment regarding the unpermitted extension of the rock groin as a violation of Section 404 of the CWA (Dkt. 26) and Section 10 of the RHA (Dkt. 27);[1] plaintiff's motion for summary judgment regarding the unpermitted fill in adjacent wetlands as a violation of Section 404 of the CWA (Dkt. 28);[2] defendant's response to plaintiff's

---

[1] Plaintiff's motions for summary judgment regarding the unpermitted extension of the rock groin as a violation of Section 404 of the CWA (Dkt. 26) and Section 10 of the RHA (Dkt. 27) are collectively referred to as the "Rock Groin" claims or the "2002 Rock Groin" claims. Defendant's motion for summary judgment as to the claims settled by the April 17, 2003, agreement also addresses the 2002 Rock Groin claims.

[2] Plaintiff's motion for summary judgment regarding the unpermitted fill in adjacent wetlands as a violation of Section 404 of the CWA is referred to as the "Fill in Wetlands" claim or the "2006 Fill in Wetlands" claim.

motions for summary judgment and motion for cross summary judgment on the fill in adjacent wetlands claim (Dkt. 33); and plaintiff's reply and response (Dkt. 34).

The magistrate judge issued a memorandum and recommendation, recommending that defendant's motion for summary judgment as to the claims settled by the April 17, 2003, agreement (Dkt. 21) be granted as to the CWA Section 404 and RHA Section 10 claims, and denied as to the CWA Section 301 claim; plaintiff's motion for summary judgment regarding the unpermitted extension of the rock groin as a violation of Section 404 of the CWA (Dkt. 26) be denied; plaintiff's motion for summary judgment regarding the unpermitted work on the rock groin as a violation of Section 10 of the RHA (Dkt. 27) be denied; and plaintiff's motion for summary judgment regarding the unpermitted fill in adjacent wetlands as a violation of Section 404 of the CWA (Dkt. 28) be granted.  Dkt. 37.

After considering the relevant filings, memorandum and recommendation of the magistrate judge, objections filed by both parties, and applicable law, the court ADOPTS the magistrate judge's reasoning and recommendation with respect to plaintiff's motions for summary judgment regarding the unpermitted extension of the rock groin as a violation of Section 404 of the CWA (Dkt. 26) and the unpermitted work on the rock groin as a violation of Section 10 of the RHA (Dkt. 27). Therefore, plaintiff's motions for summary judgment are DENIED because the claims have been fully and finally settled pursuant to the terms of the April 17, 2003, agreement between the parties.

With respect to defendant's related motion for summary judgment regarding the claims allegedly settled in the April 17, 2003, agreement (Dkt. 21), the court ADOPTS in part the magistrate judge's reasoning and recommendation.  To the extent that the magistrate judge recommends awarding summary judgment to the defendant on the CWA Section 404 and RHA Section 10 claims, the court ADOPTS both the reasoning and conclusion of the magistrate judge.  The court, however,

2

respectfully differs from the magistrate judge's finding that the agreement is ambiguous with regard to the CWA Section 301 claim.  As discussed below, the court concludes that the express terms of the April 17, 2003, agreement, the nature of CWA Section 301, and the relationship between CWA Sections 301 and 404 preclude plaintiff from asserting the Section 301 claim against defendant based on the same activities addressed by the agreement.  Therefore, defendant's motion for summary judgment pertaining to the claims settled in the April 17, 2003, agreement (Dkt. 21) is GRANTED in its entirety.

Finally, the court ADOPTS both the reasoning and recommendation of the magistrate judge with respect to plaintiff's motion for summary judgment regarding the unpermitted fill in adjacent wetlands as a violation of Section 404 of the CWA (Dkt. 28).  Therefore, plaintiff's motion for summary judgment as to the defendant's liability is GRANTED; however, plaintiff's request for injunctive relief is DENIED.  A hearing will be scheduled for the limited purpose of determining the civil penalty to be assessed for the violation.  The parties shall submit briefing on the civil penalty issue in advance of the hearing.

# I. BACKGROUND

## A. The 2002 Rock Groin Claims

### 1. Factual Background

The facts giving rise to the instant case are not in dispute: On May 9, 1997, defendant submitted a permit application to the U.S. Army Corps of Engineers ("Corps") to perform various activities on his property, which is adjacent to Offatts Bayou, in Galveston County.  Dkt. 1.  The Corps issued the permit, authorizing defendant to construct a 6-foot by 160-foot concrete walkway

on top of an existing rock groin;[3] a 10-foot by 30-foot platform at the waterward end of the rock groin, and a 20-foot by 30-foot boat ramp.   Additionally, defendant was permitted to fill approximately 0.6 acre of adjacent wetlands.  *Id.*  Defendant, however, violated the permit conditions by extending the rock groin an additional 123 feet, which filled approximately 0.08 acre of Offatts Bayou.  Defendant also performed unauthorized dredging, which resulted in the fill of approximately 0.06 acre of wetlands adjacent to the bayou.  In Spring 2002, plaintiff sent cease and desist letters to defendant.  *Id.*  But, subsequent to issuance of the letters, in July 2002, the Corps learned that defendant filled an additional 0.14 acre in the same wetland area.  *Id.*  Then, in September 2002, the Corps determined that that defendant filled an additional 0.03 acre of Offatts Bayou.  Dkt. 21, Ex. 1.

In 2003,[4] the parties voluntarily entered into a settlement agreement (the "April 17, 2003, agreement" or the "Settlement Agreement").  Per the terms of the Settlement Agreement, defendant was required to pay a civil penalty; remove the unauthorized fill from the wetlands on defendant's property; and, after completing the other requirements, apply for an after-the-fact permit for the unauthorized fill that extended the existing groin and the unauthorized dredging.[5]  Plaintiff does not dispute that defendant complied with all of the provisions of the Settlement Agreement.

Defendant submitted an application for an after-the-fact permit on August 23, 2004.  *Id.* After conducting a public interest review and evaluation, pursuant to Department of the Army

---

[3] A rock groin (or groyne) is a rock, wood, or concrete barrier built, often perpendicular, to an ocean shoreline or riverbank.  The groin is designed to interrupt wave energy and water flow, thereby preventing erosion and sediment movement.  Groins may be either submerged or visible above the water line.

[4] Defendant signed the agreement on April 17, 2003, and plaintiff signed the agreement on May 9, 2003. Dkts. 1; 21, Ex. 1. Because defendant, in the title of his summary judgment motion, refers to the agreement as the "April 17, 2003, agreement," the court references it as such.

[5] The terms of the settlement agreement are discussed in further detail in Section I.A.2, *infra*.

regulations, on April 15, 2005, the Corps denied defendant's application.  *Id.*  As a result, the Corps informed defendant that he was required to remove the unpermitted rock groin extension to comply with the previously issued permit.  Dkt. 21.

### *2. Terms of the Settlement Agreement*

The issues presented in the instant case largely involve the proper interpretation of the Settlement Agreement.  The Settlement Agreement begins by stating:

> WHEREAS, the Corps may file a complaint against Charles K. Scruggs alleging violations of Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, and Section 10 of the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. § 403, for authorized dredging and filling of tidally influenced waters of the United States and filling of non-tidal adjacent wetlands.

Dkt. 21, Ex. 1.  The Settlement Agreement then proceeds by outlining the factual basis for the parties entering into the agreement, which is entirely consistent with the factual background as framed above.  The "Claims" section of the agreements states:

> 1. On May 9, 1997, Charles K. Scruggs submitted a permit application for property he owned adjacent to Offatts Bayou . . . .  Subsequently, on April 22, 1998, Department of the Army Permit 21011 was issued.  This permit authorized: placement of fill into approximately 0.6 acre of adjacent wetlands; the construction of 140-foot concrete bulkhead; a 6-foot by 160-foot concrete walkway on top of an existing rock groin; a 10-foot by 30-foot platform at the waterward end of the rock groin; and a 20-foot by 30-foot boat ramp.
>
> 2. Following the issuance of Department of the Army Permit Number 21011, Charles K. Scruggs carried out the following activities that were not authorized by the permit:
> a) In February 2002, the Corps learned that Charles K. Scruggs extended the rock groin approximately 123 feet, which filled .08-acre of Offatts Bayou, and undertook unauthorized dredging of Offatts Bayou.
> b) In February 2002, the Corps learned that Charles K. Scruggs filled 0.06-acre of wetlands adjacent to Offatts Bayou.
> c) In July 2002, the Corps learned that Charles K. Scruggs filled an additional 0.14-acre of wetlands adjacent to Offatts Bayou.
> d) In September 2002, the Corps learned Dr. Scruggs filled an additional 0.03-acre of Offatts Bayou.
>
> 3. The Corps has determined that Charles K. Scruggs failed to obtain a Department of the Army permit prior to the extension of the rock groin, which filled 0.08-acre of Offatts Bayou;

5

the unauthorized dredging of Offatts Bayou; and the discharge of an additional 0.03-acre of fill into Offatts Bayou, in <u>violation of Section 10 of the River and Harbors Act, 33 U.S.C. § 403</u>, which prohibits the excavation, filling, alteration or modification, of any navigable water if the United States unless that work has been authorized by the Secretary of the Army.

4. The Corps has determined that Charles K. Scruggs failed to obtain a Department of the Army permit prior to filling 0.08-acre of Offatts Bayou for the groin extension, 0.20-acre of wetlands adjacent to Offatts Bayou, and an additional 0.03-acre of Offatts Bayou on the site in <u>violation of Section 404 of the Clean Water Act, 33 U.S.C. § 1344</u>, which prohibits placing of dredged or fill material in waters of the United States without a Department of the Army permit.

*Id.* (emphasis added).  After summarizing the factual basis for and nature of the claims, the general provisions of the agreement are outlined.  The Settlement Agreement provides that:

This settlement agreement shall constitute a <u>full and final</u> settlement of <u>all civil claims</u> that <u>are or might have been alleged in or arising from the potential complaint</u>, provided that both parties abide by the terms and conditions herein.  The United States does not waive any <u>other</u> rights or remedies available to it for any claims or any violations by Charles K. Scruggs of <u>other</u> federal laws, regulations, or permit conditions.

*Id.* (emphasis added).  And, further:

This settlement agreement in no way affects or relieves Charles K. Scruggs of the responsibility to comply with any <u>other</u> federal laws that may apply <u>in addition to</u> Section 10 of the RHA and Section 404 of the CWA or with any state or local law, regulations, or permit condition.  Charles K. Scruggs shall not alter or modify any navigable water of the United States, except in accordance with permits from the Secretary of the Army and any appropriate agency.

*Id.* (emphasis added). "The United States [also] reserve[d] all legal and equitable remedies available to enforce <u>the provisions of this agreement</u>."  *Id.* (emphasis added).

Additionally, defendant was required to perform specific restorative activities in order to return the property to a state of compliance with previously issued permits.  Specifically:

11. Charles K. Scruggs agrees to submit a Department of the Army After-the-Fact permit application to the Corps for the unauthorized fill that extended the existing groin and the unauthorized dredging described in paragraph 2(a) upon final execution of this agreement by the parties.  All unauthorized fill identified in Figure 3 of Appendix I must be removed in accordance with the provisions of the Restoration Conditions of Appendix I prior to Charles K. Scruggs'[s] application for the Department of the Army After-the-Fact permit.

12. Charles K. Scruggs agrees to remove all unauthorized fill material, as described in paragraph 2(b) and 2(c) from the adjacent wetland except at the existing pad on the southern portion of the site as shown in Figure 2 of Appendix I, upon final execution of this agreement by the parties.   During restoration, the previously permitted road can be constructed as previously permitted.   Furthermore, subsequent to the survey specified at Appendix I, Restoration Conditions, if the area identified as  area "E" in map attached at Appendix II is determined to have been previously permitted, the area will not require restoration.

13. Charles K. Scruggs agrees to remove all unauthorized fill material from Offatts Bayou as described in paragraph 2(d) upon final execution of this agreement by the parties.

*Id.*  Finally, defendant agreed to pay a civil penalty of $15,000.00.  *Id.*

**B. The 2006 Fill in Wetlands Claim**

After the parties entered into the Settlement Agreement, in January 2006, defendant filled an additional 0.02 acre of wetlands adjacent to Offatts Bayou.  Dkts. 1, 28.  The only element of the claim at issue was whether defendant constituted a "person," as contemplated by the CWA. Defendant posited that he was not a "person" under the CWA because his contractor performed the acts resulting in the fill of the wetlands.  Dkt. 33.

**C. The Magistrate Judge's Recommendation**s

*1. Nature of the Claims*

In December 2006, based on the Corps's recommendation, plaintiff filed suit, alleging that defendant's unpermitted extension of the rock groin and related unpermitted dredging activities violated Sections 301 and 404 of the CWA and Section 10 of the RHA.  Plaintiff also claimed that the filling of the wetlands adjacent to Offatts Bayou in 2006 constituted a separate violation of Section 404 of the CWA. Dkt. 1.  Plaintiff sought injunctive relief to prohibit defendant from further

violating the statutes and to require defendant to remove any unauthorized materials and restore or mitigate the damage; an unspecified civil penalty; and costs.  *Id.*

With respect to the 2002 Rock Groin Claims, defendant maintains that plaintiff is barred from bringing suit by the terms of the Settlement Agreement.  Dkt. 21.  Plaintiff admits the claims are based on the same facts and conduct addressed by the settlement agreement,[6] but argues that the government properly reserved the right to bring suit against defendant.  Specifically, plaintiff alleges that the Settlement Agreement did not authorize defendant to retain the unpermitted rock groin extension.  Plaintiff argues that the Settlement Agreement was intended "to resolve the adjacent wetlands fill violations, and thereafter to allow the defendant to submit an after-the-fact permit application to attempt to receive authorization for the unpermitted rock groin extension."  Dkt. 22. The crux of plaintiff's position is that, because the after-the-fact permit was denied, and the extension and results of the dredging remain in place, yet unauthorized, they continue to be violations of the CWA and RHA.  Therefore, plaintiff posits that each day constitutes a new violation not encompassed in the Settlement Agreement.

Additionally, defendant claims he should not be held liable for the 2006 Fill in Wetlands claim.  Defendant asserts that his contractor performed the work in violation of defendant's instructions and, therefore, was outside the scope of his employment.  Thus, defendant maintains that he is not a "person" as contemplated by the CWA.  Dkt. 33.

---

[6] Dkt. 22("The United States also agrees that the facts surrounding the 'Rock Groin Claim' described in the settlement agreement are comprised of the same facts that make up the 'Rock Groin Claim' at issue in this litigation.").

**2. The Magistrate Judge's Recommendations**

    a. <u>The 2002 Rock Groin Claims</u>

    Plaintiff established, and defendant did not dispute that defendant's 2002 unauthorized extension of the rock groin and dredging activities constitute violations of Sections 301 and 404 of the CWA and Section 10 of the RHA.  Dkts. 26, 27, 37.  Thus, the magistrate judge focused on the effect of the Settlement Agreement with respect to the claims raised by plaintiff.

    The magistrate judge found that the settlement "clearly and unambiguously settled" the claims plaintiff asserted with respect to the 2002 violations of Section 404 of the CWA and Section 10 of the RHA.  Dkt. 37.  Plaintiff's "continuing violation" theory was unavailing; the magistrate judge found not a continuing violation or discharge, but a single violation with continuing effects.  *See* Dkt. 37 (citing *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 397 (5th Cir. 1985) (The "[m]ere continuing residual effects resulting from a discharge are not equivalent to a continuing discharge.")).

    However, the magistrate judge addressed the CWA Section 301 claim in isolation from the CWA Section 404 violation.  Accordingly, the magistrate judge concluded that the Settlement Agreement was ambiguous with respect whether the agreement precluded plaintiff from filing a claim based on Section 301, as Section 301 was not expressly cited in the Settlement Agreement.  Dkt. 37.  Specifically, the magistrate judge found that the meaning and scope of the term "potential complaint," as used in the Settlement Agreement, was ambiguous.

    After finding the agreement ambiguous, the magistrate judge proceeded to examine extrinsic evidence in the record in an attempt to ascertain the intent of the parties.  Such evidenced included defendant's alleged awareness of the after-the-fact permitting process and defendant's claims that

he was assured that he would be permitted to retain the rock groin extension. Due to the conflicting evidence, the magistrate judge determined that a genuine issue of material fact existed, thus precluding the award of summary judgment on the CWA Section 301 claim. Dkt. 37.

As a result, the magistrate judge recommended that this court deny plaintiff's motions for summary judgment on the 2002 Rock Groin claims (Dkts. 26, 27). Further, the magistrate judge recommended granting defendant's motion for summary judgment on the violations explicitly addressed by the Settlement Agreement —the CWA Section 404 claim and the RHA Section 10 claim. But, the magistrate judge recommended that this court deny defendant's motion with respect to the Section 301 claim (Dkt. 21).

     b. <u>The 2006 Fill in Wetlands Claim</u>

With the facts not in dispute, the magistrate judge concluded that the 2006 conduct of defendant, and defendant's contractor, constituted a violation of Sections 301 and 404 of the CWA. The magistrate judge rejected defendant's argument that he did not constitute a "person" under the CWA for two key reasons. First, courts applying the CWA impose liability both on the person who performed the work and the person who controlled performance of the work. *United States v. Lambert*, 915 F. Supp. 797, 802 (S.D. W. Va. 1996); *see also* Dkt. 37. Second, intent is not required to impose liability under Section 301; the CWA imposes strict liability. *Id.* at 802 (citing *Sierra Club v. Abston Constr. Co.*, 620 F.2d 41, 46 (5th Cir. 1980) and *United States v. Earth Sciences, Inc.*, 599 F.2d 368, 374 (10th Cir. 1979)); *see* Dkt. 37. Additionally, although defendant already remedied the violation, such remedial steps are relevant only to the nature and severity of the penalty to be imposed. *Hudson River Fishermen's Ass'n v. Arcuri*, 862 F. Supp. 73, 76 (S.D.N.Y. 1994); *see also* Dkt. 37. Therefore, the magistrate judge recommended that this court grant plaintiff's

motion for summary judgment with respect defendant's liability for the 2006 Fill in Wetlands claim. Dkts. 28, 37.

After finding the defendant liable for the violation, the magistrate judge proceeded to address the penalty to be imposed.  In determining whether injunctive relief is proper, the magistrate judge determined that plaintiff must establish "that violations causing irreparable environmental harm are likely to continue on the site, the equities tip decisively in favor of the public interest . . . , and the legal remedies are inadequate to prevent further violations." *Hudson River Fishermen's Ass'n*, 862 F. Supp. at 77.  Ultimately, the magistrate judge found no irreparable environmental harm or indication that legal remedies were inadequate in preventing future violations.  Dkt. 37.  Therefore, the magistrate judge declined to recommend the award of injunctive relief; instead, the magistrate judge determined that a civil penalty was proper.[7]  In determining the amount of the civil penalty, the magistrate judge proceeded to weigh "all of the circumstances, including actual realistic threat to the environment, the nature, size, and scope of the land use and activities involved, and the post-complaint violations or violations that were on-going at the time plaintiff[] filed the suit." *Hudson River Fishermen's Ass'n*, 862 F. Supp. at 77.  However, on the sparse record before him,[8] the magistrate judge was unwilling to "arbitrarily" impose a penalty.  Rather, the magistrate judge recommended a subsequent hearing to assess the civil penalty.  Dkt. 37.

---

[7] Section 309 of the CWA clearly authorizes the imposition of a civil penalty on any person who violates Section 301 of the CWA.  33 U.S.C. § 1319(d).

[8] The record reflected defendant's remedial actions, but also included unsupported allegations of prior violations by defendant.  *See* Dkt. 37.

## II. LAW

### A. Standard of Review

Federal Rule of Civil Procedure 72(b) pertains to dispositive motions and requires the district court to review *de novo* the portions of the magistrate judge's recommendation to which the nonmovant has properly objected. FED. R. CIV. P. 72(b). Based on its review, the district court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Because plaintiff's and defendant's summary judgment motions are dispositive, the final determination will be made based on the court's *de novo* review of these motions, per plaintiff's and defendant's objections.

### B. Summary Judgment Standard

A movant may ask the court to dispose of any part of a case and render a partial summary judgment. *See* FED. R. CIV. P. 56. Partial summary judgment is a pretrial adjudication that certain issues are deemed established for trial, thereby enhancing the efficiency of the proceedings by eliminating issues on which there is no genuine issue of fact. *See FDIC v. Massingill*, 24 F.3d 768, 774 (5th Cir. 1994).

As the magistrate judge aptly articulated, the court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the

outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th

Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for

the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence

demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden

does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material

fact.  *Id.* at 322.  "For any matter on which the non-movant would bear the burden of proof at

trial . . . , the movant may merely point to the absence of evidence and thereby shift to the

non-movant the burden of demonstrating by competent summary judgment proof that there is an

issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th

Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.   To prevent summary judgment, "the non-moving

party must come forward with 'specific facts showing that there is a genuine issue for trial.'"

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)

(quoting FED. R. CIV. P. 56(e)).

## C. Statutory and Regulatory Background

### 1. The Clean Water Act, 33 U.S.C. § 1251 et seq.

The CWA was enacted for the purpose of "restor[ing] and maintain[ing] the chemical,

physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  "Section 301(a) of

the [CWA] . . . is the *keystone* of the Act's attack on point sources of pollution."  *Avoyelles*

*Sportsmen's League v. Alexander*, 473 F. Supp. 525, 530 (W.D. La. 1979) (emphasis added).

13

Specifically, Section 301 provides: "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311.

In dissecting the elements of a Section 301(a) claim, "discharge of any pollutant" is interpreted as "any addition of any pollutant to navigable waters from any point source [or] any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft." 33 U.S.C. § 1362(12). Pollutant is broadly defined and includes: dredged spoil, . . . , rock, sand, cellar dirt and industrial . . . waste discharged into water." 33 U.S.C. § 1362(6). And, "navigable waters" are "the waters of the United States," including waters previously or currently used for, or susceptible to use in, interstate or foreign commerce; wetlands that, if destroyed, could affect interstate or foreign commerce; and wetlands adjacent to such waters or their tributaries. See 33 C.F.R. § 328.3(a)(1), (3), (5), (7); 40 C.F.R. § 232.2(q)(1), (3), (5), (7). Specifically, "wetlands" are defined as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3(b). A "point source" is a "discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Courts have concluded that machinery, such as bulldozers and backhoes, is a "point source." *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 922 (5th Cir. 1983). Finally, a "person" includes "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5). Individuals who participated in or were responsible for the violations can be held liable. "The ability to control the facility,

14

coupled with knowledge of the violation, is sufficient to impose liability under the CWA." *United States v. Gulf Park Water Co.*, 972 F. Supp. 1056, 1063 (S.D. Miss. 1997).

Therefore, discharge of a pollutant, namely dredged material and fill material, into navigable waters (including adjacent wetlands) from any point source (including machinery and equipment) by any person (including those who participate in or are responsible for the violation) without a Section 404 permit issued by the Corps of Engineers, is unlawful. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123, 106 S. Ct. 455 (1985) ("Under §§ 301 and 502 of the Act . . . any discharge of dredged or fill materials into 'navigable waters' . . . is forbidden unless authorized by a permit issued by the Corps of Engineers pursuant to § 404, 33 U.S.C. § 1344.").

"Section 404 of the [CWA] authorizes the [Corps] to issue permits 'for the discharge of dredged or fill material into the navigable waters at specified disposal sites.'" *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1400 (D.C. Cir. 1998) (quoting 33 U.S.C. § 1344); *see also Avoyelles*, 473 F. Supp. at 530. Where a permit is not obtained initially, or when activities exceed the scope of the permitted work, a person can apply to the Corps for an after-the-fact permit. 33 C.F.R. § 326.3(e); *see also Orleans Audubon Soc. v. Lee*, 742 F.2d 901, 905–06 (5th Cir. 1984). "In addition to its authority to require individual permits for the depositing of dredged or fill material in navigable waters, the Corps may bring suits for injunctive and punitive relief for violations of permits issued under section 404."[9] *Orleans Audubon Soc.*, 742 F. 2d at 906; *see also* 33 U.S.C. § 1319.

---

[9] Section 309, 33 U.S.C. § 1319, is the enforcement provision of the CWA. Pursuant to Section 309, the administrator is authorized to bring civil actions, seeking injunctive relief and / or civil penalties, or criminal actions to enforce the CWA provisions. 33 U.S.C. § 1319; *see also Am. Frozen Food Inst. v. Train*, 539 F.2d 107, 126 (D.C. Cir. 1976). ("It is important to note that this section makes s 301 limitations enforceable by both criminal and civil penalties.")

### 2. The River and Harbors Act, 33 U.S.C. § 401, et seq.

"Section 10 of the RHA prohibits the obstruction of the "navigable capacity" of the waters of the United States except as authorized by the Chief of Engineers and the Secretary of Army." *Orleans Audubon Soc.*, 742 F.2d at 906 (citing 33 U.S.C. § 403). "In general, the Corps requires individual permits for all 'structures and/or work in or affecting navigable waters of the United States . . .' unless the regulations specifically exempt the activity, 33 C.F.R. § 322.3(a) (1983) . . . ." *Id.* Specifically, Section 10 of the RHA provides:

> The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any . . . structures in any . . . water of the United States . . . except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadsted, haven, harbor, canal, lake, harbor or refuge . . . unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

33 U.S.C. § 403.

### 3. The Settlement Agreement

Where the rights and liabilities of the parties are derived from federal law, the enforceability and validity of settlement agreements are determined by federal law. *See, e.g.*, *Macktal v. Sec'y of Labor*, 923 F.2d 1150, 1157 n.32 (5th Cir. 1991); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 289 (5th Cir. 1984) ; *Marchese v. Sec'y of U.S. Dep't of Interior*, 409 F. Supp. 2d 763, 770–71 (E.D. La. 2006). Because the CWA and the RHA are federally enacted, and implemented through extensive federal regulations and guidelines, reference to federal common law is appropriate in interpreting the Settlement Agreement.

"The law favors and encourages compromises." *W.J. Perryman & Co. v. Penn. Mut. Fire Ins. Co.,* 324 F.2d 791, 793 (5th Cir. 1963) (citing *J. Kahn & Co. v. Clark*, 178 F.2d 111 (5th Cir.

1949)); *see also Courtney v. Andersen*, 264 Fed. Appx. 426, 429 (5th Cir. 2008).  Settlements may provide for the release of future damages, if the parties so intend.  *W.J. Perryman & Co.*, 324 F.2d at 793; *Courtney*, 264 Fed. Appx. at 429.  The key determination in contract interpretation is the parties' intent, and courts strive to give effect to these intentions.  *See Pennzoil Co. v. Fed. Energy Regulatory Comm'n*, 645 F.2d 360, 388 (5th Cir. 1981) (citing *W. Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 592 (5th Cir. 1980)).  "To determine this intent, the court must put itself in the position of the parties by considering the instrument itself, its purposes, and the circumstances of its execution and performance.  In short, the court looks to the language of the contract and its commercial (or in this case, regulatory) context."  *Pennzoil*, 645 F.2d at 388 (internal citation omitted).

"Whether a written agreement is ambiguous or whether it clearly demonstrates the intent of the parties is a question of law.  Likewise, . . . the interpretation of an unambiguous instrument is a question of law."  *Shelton v. Exxon Corp.,* 921 F.2d 595, 602–03 (5th Cir. 1991); *see also Cedyco Corp. v. PetroQuest Energy, L.L.C.*, 497 F.3d 485, 490 (5th Cir. 2007).  "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Amoco Prod. Co. v. Tex. Meridian Res. Exploration, Inc.,* 180 F.3d 664, 669 (5th Cir.1999).  In contrast, an unambiguous agreement is "enforced as written."  *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005).

## III. ANALYSIS

Because the elements of the offenses are not in dispute, and the court concurs with the magistrate judge's determination that the elements of the CWA Section 404 and RHA Section 10

17

claims were met, but barred by the Settlement Agreement, the court does not reiterate the magistrate judge's reasoning.  Likewise, with respect to the 2006 Fill in Wetland claim, because the court adopts both the reasoning and the conclusion of the magistrate judge, plaintiff's related motion for summary judgment (Dkt. 28) is not addressed in further detail.  Instead, the court focuses on two aspects of the 2002 Rock Groin claims essential to its ruling: (1) an elaboration of the reasoning and ultimate rejection of plaintiff's "continuing violation" theory, as further explanation is merited, and (2) the viability of the Section 301 claim in light of the Settlement Agreement, where this court's reasoning and conclusion differ from that of the magistrate judge.

**A. The "Continuing Violation" Theory**

As outlined above, although plaintiff suggests that the existence of the unpermitted rock groin extension and unauthorized dredging constitute a "continuing violation," thereby permitting the claims to be raised in the instant case, the court declines to adopt the theory under the circumstances presented.  The "continuing violation" theory is utilized predominantly in three scenarios: (1) to find that plaintiffs have standing in citizen suits brought the enforce the CWA where a violation has been remedied;[10] (2) to extend the statute of limitations in cases of latent discharges;[11]

---

[10] *See, e.g.*, *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 900 F. Supp. 67 (E.D. Tex. 1995); *State Line Fishing & Hunting Club, Inc. v. City of Waskom*, 754 F. Supp. 1104 (E.D. Tex. 1991).  Section 505 of the CWA, which authorizes citizen suits, requires that the defendant be "in violation" of the Act.  In such cases, defendants attempted to avoid liability for past conduct by arguing that they were not presently "in violation" of the Act.  But, although prohibiting citizen suits for wholly past conduct, the Supreme Court in *Gwaltney* held that citizens had standing to bring suit if they can, in good faith, allege continuous or intermittent violations of the Act.  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64, 108 S. Ct. 376 (1987); *see also Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991).

[11] 28 U.S.C. § 2462 establishes a five-year statute of limitations for a discrete violation of the Clean Water Act.  But, for example, in *United States v. Reaves*, the court recognized that while the violation occurred over ten years prior, because the unpermitted fill remained in place, the violation continued until the material was removed. Therefore, the court was able to toll the statute of limitations as long as the material remained.  *United States v. Reaves*, 923 F. Supp. 1530, 1534 (M.D. Fla. 1996).

and (3) to enhance the penalties imposed on an offender.[12]  None of these situations exists in the instant case.  Instead, plaintiff characterizes each day that the violation exists as a separate, *i.e.* chargeable, offense.  Therefore, as the magistrate judge properly concluded, plaintiff's "continuing violation" theory is unavailing.

## B. Viability of the Section 301 Claim

The parties agree that the same facts and conduct outlined in the "Claims" section of the Settlement Agreement give rise to the 2002 Rock Groin claims brought in the instant suit.  And, the introductory paragraph of the Settlement Agreement explicitly states that the Corps may bring claims against defendant for violations of CWA Section 404 and RHA Section 10 based on this conduct.  However, Section 301 is not explicitly listed.  Dkt. 21, Ex. 1.  Therefore, the court must determine whether the parties intended that the Section 301 claim be encompassed within the scope of the Settlement Agreement.  After reviewing the terms of the agreement and the provisions of the statutes at issue, the court concludes that the agreement is not ambiguous and, as pled, the Section 301 claims are barred by Settlement Agreement.

## 1. Terms of the Agreement

After carefully specifying the conduct giving rise to the claims, the General Provisions of the

---

In fact, "[t]he United States Court of Appeals for the Fifth Circuit has recognized the viability of the continuing violations doctrine to toll the statute of limitations." *Schoeffler v. Kempthorne*, 493 F. Supp. 2d 805, 817 (W.D. La. 2007).  ("The continuing violations doctrine permits a plaintiff to sue on a claim that would be time-barred if considered in isolation, but where subsequent violations act to prevent accrual or otherwise toll the limitations period.)  However, "[c]ase law on the subject of continuing violations has been aptly described as 'inconsistent and confusing . . . .'" *Id.* at 818 n.28 (quoting *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 977 (5th Cir. 1980)) (internal quotations omitted).

[12] *See, e.g.*, *United States v. Amoco Oil Co.*, 580 F. Supp. 1042, 1045–46 (W.D. Mo. 1984).  Section 309 of the CWA explicitly provides for calculation of penalties based on the number of days the violation lasted.  33 U.S.C. § 1319(d) ("Any person who violates section 1311 . . . of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator . . . shall be subject to a civil penalty not to exceed $25,000 per day for each violation.")

agreement are listed.  In particular, the second paragraph contains a release: "This settlement agreement shall constitute a <u>full and final</u> settlement of all <u>civil claims</u> that <u>are or might have been alleged in or arising from the potential complaint</u>, provided that both parties abide by the terms and conditions herein."  Dkt. 21, Ex. 1.  The magistrate judge determined that the term "potential complaint" was ambiguous; however, this court respectfully disagrees.  The term "potential complaint" is defined within the document itself; it includes, at a minimum, the explicitly referenced sections of the CWA and RHA that the Settlement Agreement purports to address.  Then, by its own terms, the agreement includes "all civil claims that are or might have been alleged in or arising from the [CWA Section 404 and RHA Section 10 claims]."  *See* Dkt. 21, Ex. 1.

However, provisions of an agreement are not to be read in isolation.  *Sulzer Carbomedics, Inc. v. Oregon Cario-Devices, Inc.*, 257 F.3d 449, 456 (5th Cir. 2001) ("In determining whether the language of the contract is unambiguous . . . [courts] 'should examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless.'" (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 352 (5th Cir. 1996), *cert. denied*, 519 U.S. 1078, 117 S. Ct. 740 (1997)) (internal quotations omitted) (alterations in original))).  Thus, other provisions contained in the agreement are relevant to the court's inquiry.

Plaintiff maintains that, per the agreement, defendant was required to comply with federal laws and regulations.  However, a close reading demonstrates that the scope of required compliance was limited.  In fact, "[the] settlement agreement in no way affect[ed] or reliev[ed] Charles K. Scruggs of the responsibility to comply with any <u>other</u> federal laws that may apply <u>in addition to</u> Section 10 of the RHA and Section 404 of the CWA or with any state or local law, regulations, or permit conditions."  Dkt. 21, Ex. 1.  Likewise, although "[t]he United States reserve[d] all legal and

equitable remedies available to enforce the provisions of this agreement," the phrase "provisions of this agreement" is narrowing.

Plaintiff suggests that the intent of the Settlement Agreement was to resolve the violations of CWA Section 404 and RHA Section and, thereafter, to allow defendant to "submit" an after-the-fact permit application in order to attempt to retain the unpermitted extension. Dkt. 22. But, quite simply, the Settlement Agreement could not require defendant to "obtain" a permit; that decision is not his to make. Thus, such a provision would fail for impossibility. Instead, the Settlement Agreement required defendant to perform an obligation that was within his power: submit an application for an after-the-fact permit. The agreement could have provided explicitly for the possibility that the after-the-fact permit might be denied, but it did not. In fact, some terms of the Settlement Agreement do include provisions addressing contingencies. *See, e.g.*, Dkt. 21, Ex. 1 ("Furthermore, subsequent to the survey specified at Appendix I, Restoration Conditions, if the area identified as area 'E' in map attached at Appendix II is determined to have been previously permitted, the area will not require restoration."). But, notably, no provision exists to address the contingency of defendant's inability to obtain an after-the-fact permit. Additionally, plaintiff's alleged intention that defendant would not be permitted to retain the extension unless he obtained the after-the-fact permit is not reflected in the terms of the Settlement Agreement, nor can it be implied from the terms. Conversely, the Settlement Agreement also fails to indicate that defendant was required to actually obtain the permit in order to retain the unpermitted extension. The Settlement Agreement is silent with respect to whether the defendant can retain the extension and the rights available to plaintiff should defendant's after-the-fact permit be denied. *See* Dkt. 21, Ex. 1. Because the parties did not explicitly include these terms in the agreement, nor can they reasonably be implied, this court declines to impose them.

Therefore, reading the provisions of the agreement in their entirety, the decision turns on the nature of the claims arising under CWA Sections 301 and 404, the relationship between these sections of the CWA, and whether the Section 301 claim, as pled, truly constitutes a violation of another federal or state law.

## 2. Nature of Sections 301 and 404

Section 301 is the "cornerstone" of the Clean Water Act's regulatory program. *Lambert*, 915 F. Supp. at 802. "[Section] 301(a) prohibits *any* discharge that does not comply with several enumerated sections, including . . . 404." *Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 644 (9th Cir. 2007); *see also* 13 U.S.C. § 1311. Thus, Section 301 expressly references and requires compliance with Section 404. Thus, "Sections 301 and 404 must be read together . . . ." *United States v. Zanger*, 767 F. Supp. 1030, 1034 (N.D. Cal. 1991).

Several courts have interpreted the elements of Section 301 and Section 404 claims to be the same. Others have combined the two statutory provisions in their analysis. *See, e.g.*, *United States v. Deaton*, 209 F.3d 331, 334–35 (4th Cir. 2000) (analyzing Section 404 and 301 claims by way of the Section 301 elements); *United States v. Brace*, 41 F.3d 117, 120 (3d Cir. 1994) ("The United States, either by stipulation or at trial, established the five elements of a prima facie case for violations of Section 404 of the CWA: (1) defendants admitted that they are 'persons' within the meaning of the CWA; (2) defendants admitted that the activities at the site were conducted without a permit; (3) defendants stipulated that the site was a wetland at the time of the discharges; (4) the district court held that the site constituted waters of the United States at the time of defendants' activities; and (5) the district court held that defendants' clearing, mulching, churning, and levelling of the formerly wooded and vegetated site constituted a discharge of pollutants into the waters of the United States and that defendants paid for excavation and installation of drainage tubing in an effort

to drain the site."); *United States v. RGM Corp.*, 222 F. Supp. 2d 780, 786 (E.D. Va. 2002) ("In order for the Corps to successfully establish a *prima facie* case for a violation of CWA sections 301(a) and 404(a), it must show the defendants are (1) persons who (2) discharged a pollutant from a point source (3) into wetlands (4) that qualify as jurisdictional 'waters of the United States' (5) without a permit issued under CWA section 404."); *United States v. Lambert*, 915 F. Supp. 797, 802 (S.D. W. Va. 1996) (referencing only Section 301 and noting that "[t]o establish a *prima facie* case, the United States must show the alleged violator: 1) discharged dredged or fill material; 2) from a point source; 3) into the waters of the United States; 4) without a permit issued under Section 404 of the CWA.").  As a practical matter, it would seem an odd result to allow the Section 301 claim to proceed, when it requires the same elements of the Section 404 claim that was barred by the Settlement Agreement.

      Assuming that the Section 301 is wholly independent of the Section 404, as pled currently, and by reference to the terms of the Settlement Agreement, the Section 301 claim certainly "might have been alleged in or [arose] from the potential complaint," which clearly includes a Section 404 violation.  However, the court does not hold that *every* Section 301 claim is barred by the Settlement Agreement.  As noted previously, Section 301 makes the discharge of any pollutant in violation of one of an enumerated list of CWA sections unlawful.  Thus, a Section 301 claim based on the violation of an enumerated provision other than Section 404 might give rise to a permissible claim. Similarly, a claim based on different conduct or facts, like that of the 2006 Fill in Wetlands claim, would not be *per se* barred if brought under Section 301.

## IV. CONCLUSION

Here, plaintiff chose to enter into a Settlement Agreement with the defendant, finding it to be "in the public interest." Dkt. 21, Ex. 1. The parties could have fashioned the terms and conditions differently, but they did not. The court, therefore, declines to rewrite the agreement to produce a result not clearly contemplated by the parties. Moreover, although plaintiff's civil causes of action under Sections 404 and 301 of the CWA and Section 10 of the RHA are foreclosed by the terms of the Settlement Agreement, alternative relief may be available. Notably, the terms of the Settlement Agreement do not insulate defendant from criminal liability. It is also not entirely clear whether the defendant is subject to liability in a citizen suit. Notwithstanding these observations, the 2002 Rock Groin claims pled in this case are barred.

Therefore, plaintiff's motions for summary judgment relating to Section 404 of the CWA (Dkt. 26) and Section 10 of the RHA (Dkt. 27) are DENIED. For the reasons stated above, defendant's motion for summary judgment on the claims within the scope of the April 17, 2003, agreement (Dkt. 21) is GRANTED. Additionally, plaintiff's motion for summary judgment on the 2006 Fill in Wetlands claim (Dkt. 28) is GRANTED. A hearing is scheduled for February 18, 2009 at 10:00 a.m. in Courtroom 9-D, 515 Rusk, Houston, Texas for the limited purpose of determining the appropriate civil penalty. Parties shall submit briefs addressing the civil penalty issue on or before Friday, January 30, 2009, and responses are due on or before February 11, 2009.

Signed at Houston, Texas on January 12, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY